Judge Mills
delivered the opinion of the Court.
The court being sufficiently advised of' and concerning the premises,.delivered the. following. opinion to-wit:
James Boyd and James G. Dana, entered into a» contract which, omitting its formal parts, reads as follows: “That, in consideration of the covenants hereinafter contained, the said James Boyd on his part,, doth hereby covenant, promise and agree to and witti *588 the.said James G.Dana, to receive of him, the saidf Dana, one thousand pounds or thereabouts of fine wool, unwashed, and the same to work up and manufacture into cloth, that is to say, the one half thereof. Into fine kerseymere of the usual width of that kind of goods, and the other half into fine plain cloth, of the broad cloth texture, and half the width of superfine broad cloth;and the same goods fully and completely $o finish and make qf such colours, as the said Dana shall desire and direct, except only such blue and mixtures of blue,, as require the use of indigo for dying; for which blues or blue mixtures, if any, the said Boyd shall receive such further compensation, i„n addition to (hat hereinafter mentioned, as may be hereafter agreed on by the parties. And he, the said Boyd doth hereby, further covenant, promise and agree, to execute the said work and manufacturing, in a faithful and workman-like manner, in the sorting, scouring, mixing,.slu.bing spinning, (which is to be done finer or coarser, according to the qualities of the wool, to average twenty cuts of yarn of one pound of wool, if the wool can be spun so fine) weaving, scouring, dying, (whether in the wool or cloth) fulling, dressing, shearing, pressing, and all other branches of the manufacture; to furnish and provide all implements and materials, except the wool needful to be used in and about the said manufacturing, at hip own charge and expense; to use all proper care and'_economy to prevent any loss or waste of wool, working ove*- such locks and dropping, as may be fit, and preserving such as are not;.to use and practice due diligence and industry for the speedy accomplishment of the work, and finally to deliver, on the first day of September next, to the said Dana, at Lam-phear’s tavern in Lexington, so many of the said goods, as shall then be done and finished, and on the first day of November, so. many more as shall then be done find finished, and the remainder, if any, as soon thereafter as they can. be done and finished. And the said Dana, doth, on his part, hereby promise, covenant and agree to and with the said Boyd, in consideration of the premises, to deliver to the said Boyd* athis manufactory at Payne’s old mill, (so called) on or before the first day-of July next, ensuring the aforesaid quantity of fine fleece wool, unwashed, but- *589 free of burs ori-nearly so; and als.o pay fo the said Boyd, upon the delivery of the goods as aforesaid, for the manufacturing thereof, including materials, other than wool as aforesaid, at and after the rate of one dollar and twenty five cents per yard, payable in part of the same goods, including a fair proportion of each kind or quality, at fair wholesale cash prices; and in case the parties shall not concur and agree as to the fair wholesale cash prices of goods, so to be delivered and given in payment, as aforesaid, then it is understood and agreed, that the same shall be appraised by two disinterested and judicious men, being merchants, one of whom shall be named and appoint* ed by the said Boyd, and the other by the said Dana, which men shall value and appraise the said goods, and the valuation or price, which they shall affix to each piece, shall be deemed and taken to be the fair wholesale cash price thereof^t which, it shall be giv* en and received in payment as aforesaid.”
This instrument was dated on the 27th day of June, 1820, and sealed by both parties.
Dana brought bis action of covenant on'this writing, averring, that he did deliver to Boyd, at his manufac-tory at Payne’s old-mill, bn the 29th day of June, next after the date.of the writing, the quantity of 1000 pounds, of wool, or .thereabouts, of fine fleece wool,'to-wit: The quantity of 962 3-4 pounds, and did desire and direct the said Boyd of what colors to make the said cloths and kerseymeres, and also that he bad performed all things, on bis part, to be performed. He then alleges breaches of every clause in the covenant, on the part of Boyd, in due and appropriate form, as to performing the work at all, or doing it in due time, or doing it rightfully,or providing materials, or doing it in a workman-like manner, or using care and eoonomy, in working up the raw material.
Boyd pleaded covenants performed, with leave to give any special matter in evidence, which might have been pleaded in bar. ' The jury found a verdict for Boyd, and to the judgment rendered thereon* Dana has prosecuted this writ of error. Dana proved on the trial, that he had furnished the quantity of good wool, charged in his declaration, beforefthc day *590 on which it was to be furnished by the contract; and it also appeared, that Boyd did not deliver any part of the cloths on any of the days of payment fixed by the instrument; and Boyd to excuse his delay, offered proof that he had no jinney to spin with, at the date of the contract, but had employed a Mr. Ettonhead to make one, and that Boyd, at the time of making the contract, told Dana that the time of his beginning to work up the wool, yvould be the time that Etton-head should finish the jinney, and that Ettonhead was sent for, and told the parties that he could have thejinney ready in three weeks, and afterwards did' not finish it for three months, and not till after the water of that season was gone, so that the machinery could not move by water power, and that it was agreed between Dana and Boyd that Boyd was to commence his work, as soon as Ettonhead finished the jinney, and then whatever work could be done by the time specified, he (Boyd) was to deliver, and that Boyd did not commence the work,before thejinney was done; except some that he did by hand, because the water had failed; and further, that it was agreed that Boyd was not to be compelled to go on with the work, if the water failed before Ettonhead finished thejinney, until the water returned; it being expected, however, that the jinney would be done before the water failed. This evidence was objected to by the counsel of Dana, as incompetent and as tending to vary the written contract, and substitute a parol contractin lieu thereof. But the court overruled the objection and admitted the evidence and Dana excepted, and this forms the first question for our consideration. The question involves the proper construction of the covenant, and rests upon the inquiry, whether, under .the words of the covenant, to use due diligence and industry, and then by a specified time to deliver a portion of the goods, Boyd could be excused by the failure of the workman employed by him; and whether Dana was bound to run the risk of the inactivity, unfaithfulness and indolence of Ettonhead, and then to abide the rise and fall of water before he could receive any of the goods; or whether Boyd did not stipulate to some extent against these contingences. If the latter is the case, then it will be eyidcnt that the court *591 below decided erroneously. As we have to consider hereafter the proper construction of this covenant, when we come to consider the instructions given refused by the court below, wp will for the present, waive an answer on this point till then, and for the present, will turn our attention to another question relative to the admissibility of evidence made in ihe progress of the cause.
- After all the days for the performance stipulated in the article had expired, Boyd tendered, on one occasion, to Dana, part of the goods, and the part so tendered was accepted by Dana, after paying there-out, the stipulated price for that quantity. Sometime afterwards a second quantity was^tendered, and accepted by Dana!, after paying the stipulated price ; but still not enough to discharge the contract. One of these quantities was received by Dana, not imm& diately from the defendant, Boyd, but from a Mr. Pilkington, with whom Boyd had deposited the goods for Dana, and gave a receipt for them, objecting at the same time in the receipt to the quality, and specifying the bad qualities thereof. This Mr.'Pilking-ton, was called as a witness, and on his oath stated the quantity which he had thus delivered to Dana for Boyd. He was asked by the counsel for Dana, whether he (Dana,) had not given a receipt for the goods, and if so, when it was; and the witness answered, that there was such a receipt stating the quantity and objecting to the quality, and that he had given that receipt to the defendant, Boyd, or his counsel in court. Dana then called for the'production of the receipt, and the defendant’s counsel stated thatthe receipt was their own paper, that he was willing to • state its contents as to the quantity received, but was unwilling to exhibit the other part, which contained exceptions to the quality of the cloth,.which objections and allegations, as the defendant insisted, were untrue. The plaintiff’s counsel then attempted to prove its contents, but the court would not compel its production; there having been no notice to produce it, or reject the evidence of the witness on the application of Dana, because the writing was not produced, or admit its contents to be proved. We concur with the court below, in not rejecting the evi *592 ¿ence of the witness proving the delivery of the goods,' without producing the receipt.
Parol evidence is admissible to prove delivery of goods, without producing receipt, which he holds, acknowledging their delivery For receipt would not be conclusive, ii produced.
If writing be in court, no notice, to produce it, is necessary to letin parol proof of its contents. Demand, to produce it, & refusal, is sufficient.
The receipt was not conclusive, and the testimony of the witness, proving the actual delivery was equally good. But we do not concur with that court in refusing to let parol evidence of its contents be introduced, as the defendant refused to produce it, if it was material, because there was no notice to produce it. The paper was in the possession of the witness, and had been brought td court by him, and by him' given to the defendant, and his counsel to keep it out of view, and when demanded it was present in court.
Under Such circumstances no notice to produce it, could be necessary before its contents were proved. The design of the notice is, that the party may be apprized of the necessity of bringing it iji. If at is, already there, demand of its production is sufficient notice. But although, We do not concur with the court below in the reason given fot its decision, yet, if other reasons, sufficient to justify the decision, exist, no reversal bn that account, ought to take place. The question then is, Was the receipt material and Competent? ' If it was not, the plaintiff can have suf. fered nothing by keeping it but of sfght. It could not be competent evidence' to prove-that the goods were really not of the stipulated quality, because the saying of the plaintiff could not prove that fact, or make evidence for him- As; however, the plaintiff has assigned breaches of the covenant, in failing to do the work-skilfully and in making the cloths, he goes, in his proof, for the difference in value between the cloths received by him, and the same kind of cloths, if well done, and hfc Wished the proof of the writing to shew, that although he received the cloths,1'he did hot thereby waive the defect in their quality, but excepted thereto, at the time; thus reserving the right to recover for this defect, and if he could thus reserve this right, notwithstanding he received .the articles, then the evidence was material, not to prove there was a defect, but to shew that he did not waive such .defect by the reception. This brings us to the question, whether he could be allowed to receive them, and still reserve, and not waive, his right to recover *593 for their inferior quality? ■ If he could, then the evi-Hence ought to have been brought out; if he could not, then the evidence was immaterial, and he Could have sustained ho injury by its being withheld. This is the case of a manufacturer, agreeing to manufacture goods for an employer, at a stipulated price; and of a specified quality, and tendering and paying those, as the plaintiff contends, of an inferior quality. It is not exactly like, in all respects, to the case of á sale of goods,' at a stipulated price and quality, buij has many analogous features. In all such cases, the adjudicated cases are somewhat Contradictory; in settling what is the effect of receiving such goods; rvhether manufactured br sold, when they were defective.
\^-lBgenerui rale, that employer or recdSe* ^0ods, tbfere-by waivi/sde-there-atter, recover for any patent c"
But it may now be considered as a settled general rule, that, when the employer; or purchaser, receives; the goods, he thereby not only waives the defects, but is concluded théreby, so that he cannot recover thereafter, for any patent and known defect. To this, there may be exceptions, as, when the. defects are discovered afterwards, in which case, he miist, on the discovery thereof, offer to restore, or where there has been fraud; in concealing, or misrepresenting therbad qualities of the articles, or an express warranty. But, where thé defects are pálpable, and are perceived at the timé, he must reject the goods, and set aside the contract; in toto, and go for their full value, and Cannot be allowed to accept, and then bring his action for the bad quality; and that for good reasons. The seller or manufacturer; may, in many cases, if the goods be rejected, in ioto, supply them with others; arid, in all cases, he may elect to pay the whole price, and make the best he can of the rejected arti-clesj-in market; and he ought not to be cbmpelled, by the employer’s acceptance, to part with the goods, runnmg the risk of such reduced price fbr them, as á jury, in an action for the defect in quality; might allow. It is true, in this case, Boyd had expressly Stipulated, that the goods should be of good quality; and the materials were furnished by Dana. But; neither of these circumstances ought to make a distinction between this and other cases of employment *594 of r,n artist or niaajiactGrer. The express stipulation slid not warrant *>. reception and a soli, anil the m;v ienato furnished by him, were to be so chaygad, by the. process oí saanufacturin!», that ie ought to be bound by the sane rule that he would !wru bees, if the manufacturer bad famished the materials.
We will barely remark, that the esse of empk-T'L'v-, á tradesman to build v house on the promises oí toe employer, when he cannot reject it, and cant it on tro1 jpands of the workman, and similar casen ore subject to a different rule. II. Starkie, Ev. 641; III. Starke, Ev. 1769, and cases there ci-leaL
It results then, that the piainüSJ by ihn. rcespticn • of these goods, waived the right to recover fo*- itc bad quality thereof; and bin having excepted to the bad quality at the time, did not preserve his right to recover for it; and the court, therefore, committed no error to his prejudice, in withholding this paper.
It also appeared, on the trial, that after the first ¡arto second parcels were delivered, some limo so 3 851, Boyd brought a third parcel of the goods* claimed by birsi to be the whole ba?.u:i.e,, to the píate of payment, and then gave Eton.* notice to attend, Xtoi.v. came,and Boyd claimed ¡bis pay cut of the cloths,«> be assigned to him, and ibf.t Dana should take tb o balance. Bar,a objected to the qualify of there cloths, and would not .re.t-.nr/e thso in discharge of ihe contract, and this forms íiy. pnne*'/ai p*rt of this controversy*
As none of the goods were delivered tiil after the first and second days of payment, pcadtedl out in the article, Dana find' contended, when the first and. second payments were r.cctto, that he was not bound, to receive part, unless the whose wore tendered at once, and rejected the Inst, parcel, as not of the quality stipulated, and not tendered ia time. The court below, on the application of Dana, refused to instruct the jury, that after the two first days of payment wer ? passed, he was not bound to receive any, unless they had been manaiactuxed as soon as they could fee done, ■with due ¿Uigence, and then, was not behind to recetor. ®isy> wum the tLcSc was tendered at one®.
*595 Other insíroíioiia of {he coeri. are predicated on fete ¿dea, that the defendant bad a right, notwithstanding the tac first -".ays of payment were passed, to tender ah, by onreei;: afterwards, and that such tender would be according to the contract, and that jScyd might'. not, pay ar.y or; those days, and yet be guilty of no brer.cr
Wn cannot concur with the court below, In this idea, or sustain the refusal of that court, to give the-instruction asked» This question must be determined Ly the proper construction of the written agreement-declared on» That agreement either compelled Boyd to deliver some of the goods on the first and second days of payment, leaving only the balance to be paid -.iter the second day; or If ba could not,, by due diligence, have had any done ea the first and second days, then be was to deliver all, after the second' day was past; in other words, in case he was unable to pay any on the two first days, then all was to fee paid in a third payment.
if the last of these constructions be taken, (and it is the me most favorable for the defendant,) it seems ■necessarily to follow, from the words of the covenant, that the third payment was to be an entire one, and could not be divided into as many -as Boyd should dh'ic.w» ft, therefore follows,, that Dana could right, fhhy reject the third payment in fofo, if the quality was not good, (which was a disputed point) according fn the principies already recognized, or he could ¿eject it, because it had not come at once with the otue-r parcels, and we perceive no way to get around this conclusion, from ¿he face of the instrument. But, as Dana might have been bound to accept the third parcel, if it came so scon asr the whole could have been done, and was of the stipulated quality, and the receiving certain parcels before, would only be an easement to the trouble of receiving all at once; it .leads us to consider which of the two foregoing con* structions of the article is correct: that is, whether Bóyá was positively bound to pay spine of the articles su the first, and some on the seeond day stipulated, ¿saving only a remainder for the third payment, or •whetb«T he could excatie h^nself, by shewing bis iaa- *596 bility to get any ready on those days, and then pay the whole, and not a remainder, at the third payment. The words of the agreement, which must settle this question,áre as fpllows: Boyd coyenants^lo use and practice due diligence and industry, for the speedy accomplishment of the work; and finally, to deliver, on the first day of September next', to the said Dana, at Lamphear’s tavern, in Lexington, so wany of the said goods, as shall then be done and finished; and on the first day of Npvember next, so many more, as shall then b.e done and finished, and the remainder, if any, as soon thereafter, as they can be done and finished.’1'1
Covenant to ”enoeUefOT ac fom°plishmení of work, and first of Ser,t°D next°to pptff. «o" many of Sood8,as done and on first of Wot. next, so many more as shall then be done, and remainder, if aqy, as soon thereafter as they can be done. Def’t. must deliver some of goods on first of Sept, or covenant is broken. Error, to admit psrol evidence, to contradict or qualify this meaning ef covenant.
*596 There is nothing in these expressions, which tends to excuse Boyd from delivering some on the days stipulated. The expressions are positive, 'J'here is rip doubt intimated, but that somp will then be prepared; but there is a douht expressed, whether there will any remain, after these two days of delivery are dpne. For, it is said, “if there be any remainder,” it shall be delivered as shortly afterwards as practicable. If the construction is placed on the instrument, that Boyd might be excused from delivering any, on the two first days of delivery, then it is expressed in language, which badly conveys the idea, and many other modes of expression, would have beqh more appropriate , and there is no effect at all, given to the whole of the covenant, which points out the time of delivery, and it would have answered every purpose, to have said, that he should use due diligence, and deliver the goods, as soon as they could be done, and. the measure of diligence, would fix the day.
On the contrary, we are satisfied that the covenant pught to be construed, that Boyd was to use due dili-§enc®’to have as much done as possible, and that he fixed the time, at which his diligence should produce some of the goods, to wit: The first day of delivery; and also a time, at which a certain quantity more, on thp second day of delivery, should be produced; and then, as it was doubtful; whether all wquld be finish-he reserved the right to. deliver some afterwards, an<* the due diligence and industry, which he stipulated to use, was limited by these days. Some, at all *597 events, he' was to have done, and that, a considerable portion.
Dana, for plaintiff; Hoggin, for defendant.
Thp work was to go on, even against the opposition of the elements, and due diligence, and industry, was alone to fix the quantity to be delivered, on thp days specified; but, if he delivered none, on one, or both days, then his covenant was broken, and Dana was at liberty to reject his subsequent offers of payment, or any of them.
From this construction of the covenant, it follows, conclusively, that the court erred in the first question, before noticed, that is, in admitting the evidence, tending to shew, that the parties were to await the movement of Ettonhead, in finishing the machine, and then, the return of the water afterwards, before any of the work should be done, as contrary to the written contract; and also, that the court erred in instructing the jury, that Boyd could tender in parcels, and Dana was bound to receive in that way, after the first and second day was passed, and indeed, in all the instructions, which seem to admit, that Dana was bound to receive, in that way, or that Boyd could make a good tender afterwards.
It is, therefore, considered by the court, that the judgment be reversed, and tfie verdict set aside; because, the court admitted improper evidence, and misdirected the jury; and the cause be remanded, for new proceedings to be had, not inconsistent with this opinion, which is ordered to be certified to said court.